This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**JOSE CASTILLO,**

Plaintiff-Appellant,

v.                                    **No. 30,939**

**McCARTHY BUILDING COMPANIES, INC.,**

Defendant-Appellee,

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

James Rawley
Albuquerque, NM

for Appellant

Butt, Thornton & Baehr, P.C.
Emily A. Franke
Raul P. Sedillo
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**FRY, Judge.**

{1}     Plaintiff appeals the district court's order granting summary judgment in favor of Defendant on the basis that Plaintiff's claims are barred by the exclusive remedy

provision of the Workers' Compensation Act (WCA). NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2007). Defendant was the general contractor on a hotel construction project. Plaintiff was injured when he fell several stories at Defendant's job site. Plaintiff, an employee of Defendant's subcontractor, Les File Drywall, Inc. (Les File), was assigned to work on a composite clean-up crew (composite crew) on the day of the accident. The accident took place on a different floor from the floor where the composite crew was working.

{2}     Plaintiff was awarded workers' compensation benefits in an earlier proceeding against Les File and subsequently filed this tort action against Defendant. In its motion for summary judgment, Defendant argued that it was Plaintiff's special employer at the time of the accident and, therefore, that Plaintiff's exclusive remedy was under the WCA. Because we conclude that there are no genuine issues of material fact on the issue of Defendant's special employer status at the time of the accident, we affirm.

{3}     Because this is a memorandum opinion and the parties are familiar with the procedural and factual background, we reserve further discussion of the pertinent facts for our analysis.

**DISCUSSION**

**{4}** "We review de novo the granting of summary judgment, construing reasonable inferences from the record in favor of the party that opposed the motion. Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Blea v. Fields*, 2005-NMSC-029, ¶ 10, 138 N.M. 348, 120 P.3d 430 (citation omitted).

**Special Employer Status**

**{5}** "The exclusivity provision of the Workers' Compensation Act shields employers who comply with the Act from tort liability." *Hamberg v. Sandia Corp. (Hamberg II)*, 2008-NMSC-015, ¶ 8, 143 N.M. 601, 179 P.3d 1209. Although Defendant was not Plaintiff's general employer, it may still be protected by the WCA if it had an employment relationship with Plaintiff. *See id.* ("[The p]laintiff would have an employment relationship with [the d]efendant if he was a direct employee, a statutory employee, or a special employee."). Plaintiff argues that the district court erred in concluding that Defendant was Plaintiff's special employer on the day of the accident.

**{6}** The special employer test applies to situations "where an employee of one employer, the general employer, works temporarily for another employer, the special employer." *Hamberg v. Sandia Corp. (Hamberg I)*, 2007-NMCA-078, ¶ 10, 142 N.M. 72, 162 P.3d 909 (internal quotation marks and citation omitted), *aff'd*, 2008-

3

NMSC-015. "Th[is] test arises out of the borrowed or lent employee doctrine[.]" *Hamberg I*, 2007-NMCA-078, ¶ 10. A defendant will be considered a special employer if: "(1) the employee has made a contract of hire, express or implied, with the special employer; (2) the work being done is essentially that of the special employer; and (3) the special employer has the right to control the details of the work." *Rivera v. Sagebrush Sales, Inc.*, 118 N.M. 676, 678-79, 884 P.2d 832, 834-35 (Ct. App. 1994).

**Summary Judgment Was Proper**

{7} Plaintiff contends that there are disputed material facts under each element of the special employer test. Since Plaintiff attempted to dispute three particular facts especially relevant to whether Plaintiff was working under the direction of Defendant at the time of the accident, we will begin by considering whether these facts are truly in dispute and conclude by applying the undisputed facts to the special employer test.

{8} It was undisputed that a composite crew comprised of workers from different subcontractors would occasionally be formed to clean the entire job site. Plaintiff disputed, however, that (1) the composite crew was operated by Defendant and that its members received their instruction and direction from Defendant; (2) Plaintiff was occasionally assigned to the composite crew, where he received instruction on what

work to do from Defendant; and (3) Plaintiff was working on the composite crew at the direction of Defendant at the time of the accident.

{9}     During briefing on the summary judgment motion, Plaintiff characterized the first two facts as "inferential" based on the evidence cited by Defendant. Plaintiff further argued that he did not remember whether Defendant or Les File gave him instructions. Thus, Plaintiff argued that without direct evidence of instruction or direction by Defendant, these facts are in dispute.

{10}     We disagree with Plaintiff that there is no direct evidence supporting these facts. Defendant cited Plaintiff's deposition testimony in which Plaintiff stated, in response to the question of whether he ever worked with or took instruction from Defendant, "When they had like that composite crew, I think, yeah." Furthermore, when asked whether Defendant was in charge of or directed the composite crew, Plaintiff responded, "I think that's the way it worked, yeah." Despite Plaintiff's use of qualifying words such as "like" and "I think," the gist of Plaintiff's deposition testimony supports the fact that Plaintiff was occasionally assigned to the composite crew and that he was aware that the composite crew operated under the supervision and direction of Defendant.

{11}     Once Defendant put forth evidence "sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted[,]" it became Plaintiff's burden

5

"to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citations omitted). "Such evidence adduced must result in reasonable inferences." *Id.* Plaintiff's contention during briefing on summary judgment that he does not remember who gave him instruction while working on the composite crew does not create a reasonable inference that Defendant did not operate the composite crew, nor does it rebut Plaintiff's own statements that Defendant did. *See id.* ("An inference is not a supposition or a conjecture, but is a logical deduction from facts proved[.]" (internal quotation marks and citation omitted)). Therefore, Plaintiff has failed to establish a dispute regarding these facts that can serve as a basis for denying summary judgment. *See id.* ("When disputed facts do not support reasonable inferences, they cannot serve as a basis for denying summary judgment.").

{12}     For these same reasons, we conclude that Plaintiff failed to adequately dispute that he was assigned to the composite crew on the day of the accident. In reviewing Plaintiff's objection and the evidence cited by both Plaintiff and Defendant on this point, it is clear that the parties agree that Plaintiff was assigned to the composite crew that day but that the accident occurred while Plaintiff was on the third floor instead of the assigned sixth or seventh floor. However, Plaintiff argues that because he was

6

on the third floor at the time of the accident, he was therefore not working for the composite crew at the precise moment of the accident. We accept it as undisputed that Plaintiff was on the third floor at the time of the accident but construe Plaintiff's argument as a challenge to the legal effect of this fact. Accordingly, we reserve discussion of this fact for our discussion of whether the injury occurred while Plaintiff was acting within the course and scope of his employment.

{13}    With the above facts deemed undisputed, we now consider whether these facts alongside Defendant's other undisputed material facts established that Plaintiff was a special employee of Defendant. The first element of the special employment test requires that "the employee has made a contract of hire, express or implied, with the special employer." *Rivera*, 118 N.M. at 678, 884 P.2d at 834. We have stated before that the existence of an implied contract under this element can be established as a matter of law where the undisputed facts show that the plaintiff consented to the employment relationship. *Id.* at 679, 884 P.2d at 835.

{14}    It is undisputed that Plaintiff was assigned to the composite crew the day of the accident, that Plaintiff was aware that Defendant operated the composite crew, and that Plaintiff worked for the composite crew at least part of the day, despite his eventual foray to the third floor. These facts establish that Plaintiff accepted an assignment to work under the supervision and direction of Defendant while on the

7

composite crew. *See id.* (citing *English v. Lehigh Cnty. Auth.*, 428 A.2d 1343, 1353-54 (Pa. Super. Ct. 1981) for the proposition that consent to employment can be "demonstrated by [the] worker's submitting himself to the control and supervision of the special employer"). Therefore, Plaintiff's acceptance of this assignment is sufficient to establish as a matter of law an implied contract for hire between Plaintiff and Defendant for the purpose of the special employer test.

{15} As to the second element, Plaintiff argues that if he had been asked to direct the work of subcontractors, which we are presumably asked to assume is the main responsibility of a general contractor, then it could be said that he was doing the essential work of Defendant. Plaintiff further contends that maintaining a clean job site is everyone's responsibility. Therefore, he argues, the work being done would not be essentially that of Defendant because cleaning is the "general work of all the subcontractors working together on the project under the general direction of [Defendant]." We disagree.

{16} Previous decisions construing the special employer test have not provided bright line parameters for determining the scope of this element. It would appear, however, that contrary to Plaintiff's argument, the words "essentially" and "essential" are not synonymous. In *Vigil v. Digital Equipment Corp.*, the plaintiff was injured while dismantling a conveyor belt on behalf of the defendant. 1996-NMCA-100,

8

¶¶ 3-4, 122 N.M. 417, 925 P.2d 883. We rejected the plaintiff's argument that because the defendant was not in the business of dismantling conveyor belts, the work performed by the plaintiff could not be said to be that of the defendant. *Id.* ¶ 20; *see Hamberg II*, 2008-NMSC-015, ¶¶ 5, 13 (concluding that second element of the special employer test was met despite the fact that the plaintiff was hired as a graphic technologist but was injured while disassembling and moving a metal storage unit). We accordingly reject Plaintiff's argument here that Plaintiff could only be said to have been doing the work of Defendant if he were participating in the direction of subcontractors.

{17} We further reject Plaintiff's argument that the shared necessity among Defendant and its subcontractors to maintain a clean job site means that Plaintiff was not essentially doing the work of Defendant. In analyzing this element in *Vigil*, we found it persuasive that the plaintiff was injured while he was being supervised by the defendant's employees and performing tasks necessary to the defendant's operations, despite the relatively menial nature of the work. 1996-NMCA-100, ¶ 20. In this case, the facts establish that Plaintiff worked for the composite crew under the direction of Defendant. Further, Plaintiff did not dispute that the composite crew was often formed to clean the entire job site, not just areas specific to Les File, under the general supervision of Defendant. We discern no reason to conclude that it would not be a

necessary task of a general contractor to ensure the safe and orderly operation of the entire job site by enlisting its subcontractors' employees to perform routine coordinated cleaning. These facts and Plaintiff's statement that this was done under Defendant's "general supervision" are sufficient to establish that the work being done was essentially that of Defendant.

{18}    Finally, Plaintiff contends that it is disputed whether Defendant exercised control over the details of Plaintiff's work. *See Rivera*, 118 N.M. at 678-79, 884 P.2d at 834-35 (stating that the third element of the special employer test as to whether "the special employer has the right to control the details of the work"). Plaintiff reiterates his argument that he was merely doing work that he normally did for his general employer, as evidenced by his use of cleaning equipment supplied by Les File. Plaintiff further argues that Defendant offered no evidence that it had the right to control Plaintiff's work.

{19}    In *Hamberg II*, the Supreme Court stated that this element of the special employer test recognizes that a general employer and a special employer may concurrently exercise control over an employee to their mutual benefit. 2008-NMSC-015, ¶ 13. Thus, the question is not whether the general employer continued to retain control over some of the employee's work, but whether the defendant "lacked the right to control his work." *Id.* The Supreme Court also stated that the requisite

control "does not mean control over the technical details" of the work, but the "time and place of the services, the person for whom rendered, and the degree and amount of services." *Id.* ¶ 15 (alteration, internal quotation marks, and citation omitted).

{20} Plaintiff cites no authority supporting his claim that his use of Les File's broom, buggy, and dustpan while working on the composite crew prevented Defendant from exercising control over Plaintiff's specific use of those tools. Furthermore, contrary to his argument that Defendant adduced no evidence showing a right to control the details of his work, Plaintiff readily admits that there was evidence that Defendant directed the composite crew, of which Plaintiff was a part, to clean certain floors of the job site. This assertion is supported by the facts discussed above regarding Defendant's operation and control of the composite crew. Therefore, we conclude that there are no genuine issues of material fact that Defendant possessed some right to control Plaintiff's work. It may not have been an exclusive right, but exclusivity is not required. *See id.* ¶ 13; *cf. Hamberg I*, 2007-NMCA-078, ¶ 33 (stating that "this Court has rejected the argument that lack of constant supervision or direction somehow indicates a lack of control by a purported special employer").

{21} Thus, there are no genuine issues of material fact as to whether Plaintiff accepted his assignment to the composite crew, understood that he was to take direction from Defendant while working on the composite crew, or that Defendant

11

exercised the requisite control over Plaintiff during this assignment. Therefore, we hold that the district court properly concluded that Plaintiff was a special employee of Defendant on the day of the accident.

**Plaintiff's Injury Occurred in the Course and Scope of His Special Employment**

{22}    If the injury did not arise out of the course of Plaintiff's employment, Defendant would have no workers' compensation exclusivity defense. *See Gutierrez v. Amity Leather Prod. Co.*, 107 N.M. 26, 29, 751 P.2d 710, 713 (Ct. App. 1988) (stating that an injury is only compensable "if it results from an accidental injury 'arising out of' and occurring 'in the course of' the worker's employment"). It is undisputed that on the day of the accident Defendant directed the composite crew to clean either the sixth or seventh floor of the job site. Throughout Plaintiff's briefing on appeal, he argues that because the accident happened on the third floor, the facts do not establish that the accident arose out of or in the course of his special employment assignment.

{23}    "Arising out of" and occurring "in the course of" the worker's employment are distinct requirements. *Id.* "For an injury to arise out of employment, the injury must have been caused by a risk to which the injured person was subjected in his [or her] employment." *Velkovitz v. Penasco Indep. Sch. Dist.*, 96 N.M. 577, 577, 633 P.2d 685, 685 (1981). This includes accidents that were reasonably incidental to the employment. *Chavez v. Mountain States Constructors*, 1996-NMSC-070, ¶ 27, 122

N.M. 579, 929 P.2d 971. " '[I]n the course of' refers to the time, place, and circumstances under which the injury occurred." *Gutierrez*, 107 N.M. at 29, 751 P.2d at 713.

{24} It is undisputed that Plaintiff was assigned to the composite crew and still on the premises at the time of the accident. Plaintiff's factual contention on this point was that neither he nor his Les File supervisors knew what he was doing on the third floor when the accident occurred. Plaintiff's contention is insufficient to create a genuine issue of material fact. *See Romero*, 2010-NMSC-035, ¶ 10 (stating that "the party opposing the summary judgment motion must adduce evidence to justify a trial on the issues" and that "[s]uch evidence adduced must result in reasonable inferences" (alteration, internal quotation marks, and citations omitted)). The accident happened on the premises as a result of an alleged construction-related hazard during work hours. By itself, Plaintiff's assertion of an unexplained absence from his composite crew assignment invites too much conjecture to draw the inference that Plaintiff's injury did not arise out of and was not in the course of his employment. *See id.* ("An inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guess work is not a substitute therefor." (internal quotation marks omitted) (quoting *Stambaugh v. Hayes*, 44 N.M. 443, 451, 103 P.2d 640, 645 (1940))). Therefore, we conclude that, based on the record before us, there is no genuine issue

of material fact that Plaintiff's injury arose out of and occurred in the course of his special employment.

**CONCLUSION**

{25}    For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of Defendant.

{26}    **IT IS SO ORDERED.**


_____

**CYNTHIA A. FRY, Judge**

**WE CONCUR:**


_____

**RODERICK T. KENNEDY, Chief Judge**


_____

**MICHAEL D. BUSTAMANTE, Judge**